NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0425n.06
Filed: July 16, 2008

No. 07-5200

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **ON APPEAL** FROM THE |
| **Plaintiff-Appellee,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| v. | ) | DISTRICT OF TENNESSEE |
| | ) | |
| MICHAEL EVERETT JONES, | ) | **O P I N I O N** |
| | ) | |
| **Defendant-Appellant.** | ) | |

BEFORE: NORRIS, GIBBONS, and GRIFFIN, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Defendant Michael Everett Jones appeals from a jury verdict finding him guilty of aiding and abetting the possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. This appeal focuses on defendant's contention that the evidence introduced during trial was constitutionally insufficient to support the verdict. In essence, we must determine whether the driver of an automobile is criminally responsible for drugs found on the person of his passenger even though there is no direct evidence of the driver's independent knowledge of the drugs.

**I.**

This case stems from a traffic stop. On January 9, 2006, Chief Deputy Ronnie Moore and Deputy James Jones of the Lake County, Tennessee Sheriff's Department stopped a gray 1989 Chevrolet driven by defendant based upon an observed seat-belt violation. Co-defendant Lamar

Wilson was a passenger in the car at the time of the stop. Defendant pulled his vehicle over as soon as Moore turned on his emergency lights. Moore approached the driver's side of the vehicle while Deputy Jones approached the passenger's side.

Defendant supplied a driver's license with a Memphis address but told Moore that he lived in Tiptonville, a town near the Kentucky border where the stop occurred. The car had Kentucky plates and was registered to a third party. After further questioning, defendant acknowledged that he had served a federal sentence for gun possession. According to Moore and Deputy Jones, both defendant and Wilson appeared anxious.

Moore returned to the cruiser to initiate license plate and driver's license checks. When finished, he returned to the stopped car, this time approaching from the passenger's side. Moore noticed that defendant was talking on a cell phone and told him to end the conversation. After hanging up, Moore overheard defendant tell Wilson, "They're coming." At trial, Moore testified that he worried that defendant might be alluding to friends of defendant who had been summoned to effect a violent escape.

Moore then asked defendant if he could search the car. Defendant consented. At this point, approximately six to eight minutes had passed since the stop. Moore conceded that neither defendant nor Wilson had been placed under arrest, nor had he issued a traffic citation. As Wilson stepped out of the car, Moore told him that he was subject to a pat-down. Deputy Jones did the same to defendant. During the pat-down of Wilson, an object wrapped in fabric softener and duct tape fell out of his pant-leg. It was later found to contain 500 grams of cocaine. Assuming that the package contained narcotics, Moore attempted to handcuff Wilson while Deputy Jones was told to handcuff

defendant. Wilson escaped from the grip of Moore and began running down the highway. At that moment, a car driven by co-defendant Lashawnda Ceasar arrived; it was later established that defendant had called her on the cell phone. Although Moore told her not to leave, she drove off with Wilson hanging onto the hood of her car.[1] Moore returned to the car to assist Deputy Jones and they handcuffed defendant. Wilson and Ceasar were arrested not long thereafter.

Defendant and Wilson filed a motion to suppress the results of the traffic stop. The district court granted the motion as it applied to Wilson but denied it as to defendant. Defendant proceeded to trial and the jury returned a guilty verdict with respect to the single charge of aiding and abetting a drug trafficking crime. The district court denied defendant's motion for judgment of acquittal as well as a renewed motion for judgment of acquittal or a new trial.

## II.

On appeal, defendant primarily focuses upon the sufficiency of the evidence although he also challenges the denial of his motion to suppress.

### 1. *Sufficiency of the Evidence*

Defendant faces an onerous standard of review with respect to this issue:

> We . . . review [defendant's] claims to determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt." *United States v. Wood*, 364 F.3d 704, 716 (6th Cir. 2004) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). A review for sufficiency of the evidence requires us to "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (internal quotation marks omitted).

---

[1] Although charged as an accessory after the fact, Ceasar was acquitted at trial.

"Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999) (internal quotation marks omitted).

*United States v. Wheaton*, 517 F.3d 350, 365 (6th Cir. 2008).

In order to establish defendant's guilt of the crime charged, the government must prove the following beyond a reasonable doubt:

The elements of [21 U.S.C. § 841(a)(1)] are that "(1) the defendant knowingly; (2) possessed a controlled substance; (3) with intent to distribute." *United States v. Gibbs*, 182 F.3d 408, 424 (6th Cir. 1999). "To prove aiding and abetting, the government must show that [the defendant] knew that the principals possessed [the controlled substance] with the intent to distribute it, and that [the defendant] assisted in their plan to deliver [it]." *United States v. Ledezma*, 26 F.3d 636, 641 (6th Cir. 1994). [Defendant's] mental state is thus an essential element of the offense . . . .

*United States v. Bennett*, 291 F.3d 888, 895 (6th Cir. 2002).

Defendant's position is straightforward: he did not personally possess cocaine or large amounts of cash; he merely drove a car with a passenger who did. He points out that he cooperated with law enforcement by stopping his car when asked to do so, consented to a search of the vehicle, revealed his past conviction for gun possession,[2] and agreed to a pat-down. No charges were ever filed relating to his use of the car and there was nothing inherently suspicious in the fact that it happened to be licensed in Kentucky and belonged to someone else.

With respect to his alleged "nervousness," Deputy Moore conceded that suspects are often nervous. Given that defendant had been pulled over, a certain amount of apprehension was to be

---

[2] The district court granted a motion in limine excluding information relating to this prior conviction from trial.

expected. Furthermore, defendant did not try to flee when Ceasar arrived (not to mention that the jury acquitted her of criminal intent as well).

Defendant refers us to a drug trafficking conspiracy case in which this court concluded that mere presence in a house that contained drugs and firearms is insufficient to establish an agreement to engage in a conspiracy. *United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990). Although the case before us involves aiding and abetting, defendant argues by analogy that the mere fact that he was driving the car is not enough to establish his knowledge of the presence of the drugs. *See United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991) (living three feet from a marijuana patch is not enough, standing alone, to establish participation in distribution).

While this case is undoubtedly close, our "rational juror" standard of review controls the outcome. In our view, defendant's decision to call Ceasar tips the balance. Although defense counsel argued to this court that there could have been an innocent explanation for this call, a rational juror could determine that no one would summon assistance from an acquaintance based upon a traffic stop for failure to wear seat belts. Rather, it is logical to conclude that the call indicated that defendant knew of the presence of the drugs. The jury could further conclude, from the fact that the recipient of the call arrived and carried off Wilson, that defendant assisted in the possession of the cocaine with intent to distribute.[3]

*2. Motion to Suppress*

---

[3] In our view, the dissent mistakenly acts as trier of fact by crediting Ceasar's version of events over that provided by Moore. Credibility determinations are reserved for the jury. As long as the evidence is sufficient for a rational juror to find guilt beyond a reasonable doubt, we may not substitute our own conclusion for that of the jury.

This circuit has recently reiterated its long-standing approach to reviewing motions to suppress:

> "When reviewing the denial of a motion to suppress, [this court] review[s] the district court's findings of fact for clear error and its conclusions of law *de novo*." *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). "A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). Additionally, the evidence produced at a suppression hearing must be viewed "in the light most likely to support the district court's decision." *Ibid.*

*United States v. Nichols*, 512 F.3d 789, 793 (6th Cir. 2008).

After holding an evidentiary hearing, the district court entered an order granting Wilson's motion to suppress, but denying the motion submitted by defendant.

The evidence produced at the hearing was essentially a subset of that given during the trial and will not be repeated here. With respect to Wilson, the court concluded that "the United States has not shown that Deputy Moore had a reasonable belief that Wilson was armed and dangerous before conducting the pat-down search."

However, it noted that defendant lacked standing to contest the pat-down of Wilson and therefore the evidence seized in that pat-down was admissible with respect to him. The court then explained that the initial stop was valid due to the seat-belt infraction. Although the officers were obliged to limit their investigation to the proper scope, the court concluded that nothing was amiss:

> Here, the manner and length of the detention were reasonable. Deputy Moore testified that only ten to fifteen minutes had elapsed from the time of the initial stop to the point where he asked permission to search the car. During those initial ten to fifteen minutes, Moore testified that he had been unable to effectuate the purpose of the stop – to issue a seat belt citation – because the defendants had been unable to

produce the car's registration and proof of insurance. In addition, Moore was still waiting on the results of the driver's license check. Furthermore, the observed seat belt violation provided sufficient grounds for the deputies to request that Wilson and Jones exit the vehicle.

Finally, the court observed that the consent to search the car had been voluntary (and did not turn up any evidence in any event).

We note that defendant's argument on this issue is perfunctory, reflecting his recognition that the reasoning of the district court is correct.  We affirm on that basis.

## III.

The judgment of the district court is **affirmed**.

GRIFFIN, Circuit Judge, dissenting.

I respectfully dissent. While I join the portion of the majority opinion that affirms the denial of defendant's motion to suppress (Section II, 2), I would reverse defendant's conviction on the grounds of insufficiency of the evidence.

A defendant challenging the sufficiency of the evidence has a "very heavy burden." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). "When reviewing an insufficient-evidence claim, this court must decide whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007). *See also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

When deciding whether any rational trier of fact could have found the essential elements of the crime, we do not "weigh the evidence, consider the credibility of witnesses, or substitute [our] judgment for that of the jury." *Chavis*, 296 F.3d at 455 (quoting *United States v. Ferguson*, 23 F.3d 135, 140 (6th Cir. 1994)). We will reverse a judgment on insufficiency-of-the-evidence grounds "'only if [the] judgment is not supported by substantial and competent evidence upon the record as a whole.'" *United States v. Barnett*, 398 F.3d 516, 522 (6th Cir. 2005) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)); *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992). If, however, the evidence is such that a "rational fact finder must conclude that a reasonable doubt is raised, this Court is obligated to reverse a denial of an acquittal motion." *United States v.*

*Lloyd*, 10 F.3d 1197, 1210 (6th Cir. 1993) (citing *United States v. Collon*, 426 F.2d 939, 942 (6th Cir. 1970)).

To establish a violation of § 841(a)(1), the government must prove the following elements: "(1) knowing (2) possession of a controlled substance (3) with intent to distribute." *United States v. Mackey*, 265 F.3d 457, 460 (6th Cir. 2001) (quoting *United States v. Christian*, 786 F.2d 203, 210 (6th Cir. 1986)). To prevail on its theory of aiding and abetting, the government bore the burden of proving beyond a reasonable doubt that defendant Jones knew that Wilson possessed the cocaine with intent to distribute and assisted Wilson in a plan to deliver it. *United States v. Gardner*, 488 F.3d 700, 711 (6th Cir. 2007); *United States v. Paige*, 470 F.3d 603, 609 (6th Cir. 2006).

It is well settled that a defendant may not be held criminally responsible solely for being physically present near contraband. *Parker v. Renico*, 506 F.3d 444, 450 n.4 (6th Cir. 2007) (observing that a defendant's presence near a firearm is insufficient to establish constructive possession); *United States v. Arnold*, 486 F.3d 177, 183 (6th Cir. 2007) (en banc) ("'Presence *alone*' near a gun . . . does not 'show the requisite knowledge, power, or intention to exercise control over' the gun to prove constructive possession.") (quoting *United States v. Birmley*, 529 F.2d 103, 107-08 (6th Cir. 1976)). *See also United States v. Conrad*, 507 F.3d 424, 434 (6th Cir. 2007) (observing that presence near contraband is, by itself, insufficient to support a conviction for aiding and abetting); *United States v. Pena*, 983 F.2d 71, 73 (6th Cir. 1993) (holding that mere presence in a place where drugs were discovered is not enough to sustain a conviction for aiding and abetting in possession with intent to distribute illegal drugs); *United States v. Craig*, 522 F.2d 29 (6th Cir. 1975) (same).

In its attempt to show defendant Jones knew that Wilson possessed cocaine,[1] the government relies upon an unsupported, irrational theory that defendant's phone call was an attempt to trigger a pre-planned escape strategy conceived by him, Wilson, and Jones's friend Lashawnda Ceaser, in the event defendant and Wilson were arrested on their way to an alleged drug transaction. According to the prosecution, defendant's plan called for Ceaser to drive to the scene of the traffic stop, and for defendant and Wilson to escape as passengers in Ceaser's car. In reality, the alleged escape plan played out as follows: as Ceaser approached the site of the traffic stop, she saw a man (Wilson) running toward her car as she stopped to avoid hitting him. Wilson jumped on the hood of Ceaser's car, shouted "go, go, go!" while Ceaser responded "no, no, no," before stepping on the gas and departing the scene of the traffic stop, leaving defendant alone to face arrest.

The escape plan theory overlooks significant facts that would cause *any* rational juror to conclude that the prosecutor's hypothesis is totally implausible. First, although the government suggests that defendant was so worried about the possibility of being stopped by the police while traveling on Highway 78 that he devised an escape plan before he began his trip, defendant Jones was apparently unconcerned about his plan being discovered. According to Officer Moore, defendant was speaking on his cell phone when Moore returned from checking his driver's license and did not hang up until he was asked, repeatedly, by Officer Moore. One would expect a drug

---

[1]Ironically, Wilson's motion to suppress evidence of the cocaine, premised on his claim of a Fourth Amendment violation in his pat-down, was granted by the district court and affirmed by this court on appeal. *United States v. Wilson*, 506 F.3d 488 (6th Cir. 2007). Defendant Jones was convicted and sentenced to twenty years of imprisonment based on the same cocaine possessed by Wilson, but suppressed in the government's case against Wilson.

dealer to begin his escape plan somewhat more secretively, rather than triggering the alleged escape attempt by announcing "they're coming" in the presence of the police.

Second, and more significantly, the government ignores the facts that Ceaser initially exclaimed "no, no, no" when approached by Wilson and then traveled a mere 400 yards before stopping in a driveway. Wilson then jumped off of the hood of the car, while Ceaser turned around and traveled back towards the police. Defendant's lack of concern in the privacy of his cell phone call and Ceaser's verbal response and near-immediate return toward the police are significant actions that are inherently inconsistent with the government's escape theory. Also at odds with the government's position is the jury's not guilty verdict regarding Ceaser.

Finally, it should be noted that when Deputy Moore asked defendant "[d]o you have any drugs or anything in the car that I should know about?" Jones replied "no" and then voluntarily consented to the search of the vehicle.

In relying on the prosecution's hypothesis, the majority makes two inferences that are not supported by the evidence: first, defendant was calling Ceaser in order to evade a potential arrest; and, second, Jones feared a potential arrest because he knew that Wilson was carrying cocaine. A finding of aiding and abetting may be based on circumstantial evidence, but "a line must be drawn between valid circumstantial evidence, and evidence which requires a leap of faith in order to support a conviction." *United States v. White*, 932 F.2d 588, 590 (6th Cir. 1991). *See also United States v. Reece*, 86 F.3d 994, 997 (10th Cir. 1996) ("A verdict that is, in fact, based upon a guess or a mere possibility cannot be upheld.").

Rather than taking these two leaps of faith and accepting the government's unsupported "what if" theory, I would follow the approach taken by the Tenth Circuit in *Reece*, which addressed the same issue under substantially similar circumstances. In *Reece*, the driver and his passenger, Scott Clift, were pulled over for failing to signal a lane change. As one of the police officers approached the passenger side of Reece's vehicle, he noticed that the passenger was holding two hand-rolled cigarettes and a bag that contained a green, leafy substance. *Id.* at 995. Clift was removed and searched, revealing 11.28 grams of marijuana and 13.39 grams of crack cocaine in his pockets. A search of Reece revealed no narcotics, but officers found $2,700 in the glove compartment. *Id.* At trial, Clift testified that the narcotics and cash were his, that he had placed the money in the compartment to hide it from the police, and that Reece had no knowledge of the narcotics or cash. *Id.*

After the police officers discovered the contraband, Reece and Clift were placed in the backseat of the police cruiser, where their conversation – unbeknownst to them – was recorded. *Id.* The tape of the recording was played at trial, which recorded Reece urging Clift to take responsibility for the drugs and Reece's question to Clift regarding whether all of the contraband had been discovered. *Id.* Despite Clift's testimony at trial, Reece was convicted of possession of narcotics with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).

On appeal, the Court of Appeals for the Tenth Circuit held that the evidence offered at trial was insufficient to support Reece's conviction, holding "our review of the evidence fails to link Mr. Reece to the narcotics in any way other than presence and proximity, let alone show his intent to sell." *Id.* at 996. The court explained:

> The only evidence introduced that could conceivably link Mr. Reece with the narcotics by indicating his knowledge of the presence of the narcotics was the tape recorded conversation in the back of the vehicle. By the time the recording was made, however, it is clear that Mr. Reece was aware that narcotics were found on Mr. Clift, and had indeed seen the narcotics on the trunk of the vehicle following their removal from the person of Mr. Clift. Because constructive possession requires a nexus between the defendant and the contraband where there is more than one possibility as to who is in possession of that contraband, mere dominion over the vehicle and proximity to the contraband will not satisfy the possession element. The government's case is barren of evidence linking or demonstrating a nexus between Mr. Reece and the narcotics found on Mr. Clift's person and therefore cannot sustain the conviction and the 262 month sentence.

*Id.*

Similarly, in the present case, no direct evidence was introduced to prove that defendant had any knowledge of Wilson possessing cocaine at the time of the traffic stop. Indeed, there may have been a stronger case for finding possession in *Reece* than here; in *Reece*, $2,700 was found in an area of joint control, while all of the cocaine found during the stop at issue in this case was discovered in Wilson's pockets. Regardless, as in *Reece*, the government's circumstantial evidence case is devoid of *any* evidence demonstrating a connection between Jones and the cocaine found in Wilson's pocket. "The jury may draw reasonable inferences from direct or circumstantial evidence, yet an inference must amount to more than speculation or conjecture." *Id.* at 996. In my view, the government's theory based on Jones's phone call to Ceaser is no more than pure speculation and conjecture. For these reasons, I would hold that the government's implausible theory is not supported by substantial and competent evidence and, thus, the evidence was insufficient for any rational juror to find the elements of the crime proven beyond a reasonable doubt.

I respectfully dissent. I would reverse defendant's conviction.